ENTERED
CLERK, U S DISTRICT COURT

SEP
SEP 16 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

SEP 13 2002

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BOSCH GMBH and S-B POWER TOOL CO., | CASE NO. CV00-12590 AHM (RZx) |
| Plaintiffs, | |
| v. | **ORDER CONSTRUING TERMS OF THE `833 PATENT, DENYING JSB'S MOTION FOR SUMMARY JUDGMENT, GRANTING BOSCH'S MOTION FOR SUMMARY JUDGMENT AND DENYING BOSCH'S MOTION FOR LEAVE TO AMEND THE PLEADINGS** |
| JAPAN STORAGE BATTERY CO., LTD., | |
| Defendant. | |
| JAPAN STORAGE BATTERY CO., LTD., | |
| Counterclaimant, | THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |
| v. | |
| ROBERT BOSCH GMBH and S-B POWER TOOL CO., | |
| Counterdefendants. | |

## I.

## BACKGROUND

This matter is before the Court on the parties' cross-motions for summary judgment.

1    The issue in this case is whether Plaintiffs' power drills infringe
2  Defendant's patent (U.S. Patent No. 4,791,833, or "the `833 patent") for a cordless
3  power drill that can operate at both high and low speeds using a "multistage
4  planetary gear system." Miyamoto Decl. ¶ 2. The `833 patent is entitled
5  "Reduction Gear Mechanism for Motor-Driven Drill Incorporating Speed
6  Changing Mechanism."[1]

7    Two-speed operation in cordless drills is desirable because the low speed
8  provides sufficient torque for screw fastening, while the high speed facilitates
9  conventional hole drilling. Miyamoto Decl. ¶ 4. Prior to the development of the
10  `833 patent, two-speed cordless drills were not common because they required
11  shafts and switching mechanisms that were too heavy and bulky for cordless
12  designs. *Id.* The `833 patent incorporates a speed change mechanism in the form
13  of a pivoting lever mounted into a groove formed in a sliding internal gear of a
14  planetary gearset. Miyamoto Decl. ¶ 5. Planetary gearsets, in contrast to spur
15  gears, allow the placement of input and output shafts in a straight line, and avoid
16  the need for certain bearings. Miyamoto Decl. ¶ 5. The pivoting lever allows the
17  operator easily to switch from high speed operation to low speed operation and
18  back again. Miyamoto Decl. ¶ 5. This innovation in the speed changing
19  mechanism permits the manufacture of light-weight cordless power drills.
20  Miyamoto Decl. ¶ 5.

21    Defendant and Counterclaimant Japan Storage Battery Co., Ltd. ("JSB")
22  alleges that several models of Bosch power drills manufactured and sold by
23  Plaintiffs and Counterdefendants Robert Bosch GmbH and its subsidiary S-B
24  Power Tool (collectively "Bosch") infringe its `833 patent. Bosch alleges that its
25  power drills do not infringe the `833 patent. Bosch has not yet challenged the
26  validity of the `833 patent, although it has moved for leave to amend its reply to

27  _____

28    [1]The `833 patent is Exhibit A to the Corsello Declaration.

1    JSB's counterclaims to state an affirmative defense that the `833 is invalid because
2    it contains indefinite terms.  All of the Bosch drills at issue in the case use a
3    pivoting lever in a structure known as the "PG1 gearset."  Cotter Decl. Ex. S
4    (Stipulated Case Management Order entered July 24, 2001).

5            The parties have streamlined the case by focusing on whether two of the
6    limitations of the `833 patent claims – the "gear limitation" and "semicircular lever
7    limitation" – are present in Bosch's drills.  More specifically, the parties ask the
8    Court to resolve:

9            (1)    whether JSB is estopped under the doctrine of prosecution history
10                  estoppel from arguing that the Bosch PG1 gearset contains an
11                  equivalent of the claim limitation "said planet gear holding plate has a
12                  set of gear teeth engaged with said internal gear teeth in the first
13                  position of said internal gear to allow said internal gear to rotate with
14                  said planet gear holding plate" (hereafter "the gear limitation"), and
15           (2)    whether the claim limitation "said lever extending in a semicircle
16                  around said internal gear" (hereafter "the semicircular lever
17                  limitation") includes the lever used in the Bosch PG1 gearset under
18                  theories of literal infringement and/or doctrine of equivalents.
19   Cotter Decl. Ex. S at 2-3.

20           In its papers submitted prior to the Feburary 8, 2002 hearing, Bosch argued
21   that: (1) JSB narrowed the gear limitation while it was prosecuting the `833 patent
22   and is therefore estopped from arguing that the Bosch drill infringed that
23   limitation by equivalents;[2] (2) there is no equivalent of the gear limitation present
24   in the Bosch drill; (3) JSB narrowed the semicircular lever limitation while it was
25   prosecuting the `833 patent and is therefore estopped from arguing that the Bosch

26

27           [2]JSB concedes that the Bosch drill does not literally infringe the gear limitation.
28   Defendant's Statement of Genuine Issues ("DSGI") ¶ 22.

1  drill infringed that limitation by equivalents; and (4) the Bosch drill does not
2  literally infringe the semicircular lever limitation.[3]

3       In its papers, JSB argued that: (1) prosecution history estoppel does not
4  apply because even if the gear limitation was amended (which JSB contests), it
5  was not narrowed; (2) an equivalent of the gear limitation is present in the Bosch
6  drill; and (3) the semicircular lever element is literally present in the Bosch drill.
7  JSB did not assert an equivalents argument with respect to the semicircular lever
8  limitation because it conceded that the semicircular lever limitation had been
9  subject to a narrowing amendment, and that such argument therefore was
10 precluded under the Federal Circuit's *Festo* decision.  JSB's Supplemental Brief
11 Regarding the *Festo* Decision at 6.

12      On February 8, 2002, the Court held a hearing on the parties' cross-motions
13 for summary judgment.  The Court issued a tentative order granting summary
14 judgment to Bosch on the ground that JSB was estopped under the doctrine of
15 prosecution history estoppel from arguing that Bosch's drill infringed by
16 equivalents the gear limitation in claim 1 of the `833 patent.  Because the Supreme
17 Court had granted a petition for certiorari in *Festo*, however, the Court informed
18 the parties during the hearing that it was inclined to withhold a final order
19 regarding summary judgment until the Supreme Court issued an opinion.  The
20 Court did not reach whether the Bosch drill literally infringed the semicircular
21 lever limitation.

22      On May 28, 2002, the Supreme Court issued a decision in *Festo*, 122 S. Ct.
23 1831 (2002).  On June 21, 2002, JSB filed a supplemental brief regarding the
24 effect on this case of the Supreme Court's decision in *Festo*.  In that brief, JSB
25 argues that prosecution history estoppel does not apply either to the gear limitation
26

---

27      [3]The literal infringement of the semicircular lever limitation is the only issue
28 that requires the Court to construe the terms of the `411 patent.

4

1   or to the semicircular lever limitation.  JSB argues that even though in its summary

2   judgment motion it did not assert an equivalents argument with respect to the

3   semicircular lever limitation, it may now do so under the Supreme Court's *Festo*

4   decision.  On July 5, 2002, Bosch filed a supplemental responsive brief in which it

5   argues that the Supreme Court's *Festo* decision mandates the same result already

6   reached by the Court.

7        On July 30, 2002, the Court ordered supplemental briefing on the issues (1)

8   whether JSB is barred from making an equivalents argument with respect to the

9   semicircular lever limitation under the doctrine of prosecution history estoppel;

10   and (2) assuming that JSB is not barred, whether an equivalent of the semicircular

11   lever limitation is present in Bosch's PG1 gearset.  The parties filed supplemental

12   briefs on August 12, 2002.

13        Having considered all of the papers and the parties' arguments at the

14   February 8, 2002 hearing, the Court now concludes that: (1) JSB is not estopped

15   under the doctrine of prosecution history estoppel from arguing that the Bosch

16   drill contains an equivalent of the gear limitation; (2) there is a genuine issue of

17   material fact whether the Bosch drill contains an equivalent of the gear limitation;

18   (3) the Bosch drill does not literally infringe the semicircular lever limitation; and

19   (4) JSB is estopped under the doctrine of prosecution history estoppel from

20   arguing that the Bosch drill contains an equivalent of the semicircular lever

21   limitation.

22                             **II.**

23                   **DISCUSSION**

24   **A.   Is JSB Estopped From Arguing that the Bosch PG1 Gearset Contains**

25         **an Equivalent of the Gear Limitation?**

26        JSB concedes that the gear limitation is not literally present in the PG1

27   gearset, but contends that an equivalent to the gear limitation is present in the PG1

28   gearset.  DSGI ¶ 22.  Before considering whether the PG1 gearset is, in fact, an

1  equivalent of the gear limitation, the Court must first determine whether under the

2  doctrine of prosecution history estoppel JSB is estopped from pursuing an

3  equivalents theory.

4      The central question is whether the gear limitation in issued claim 1 was

5  amended and narrowed during JSB's prosecution of the `833 patent.  If the

6  limitation was not narrowed, prosecution history estoppel does not apply.  *Festo*,

7  112 S. Ct. at 1840 ("Estoppel arises when an amendment is made to secure the

8  patent and the amendment narrows the patent's scope."); *Bose Corp. v. JBL, Inc.*,

9  274 F.3d 1354, 1359-60 (Fed. Cir. 2001) (holding that prosecution history

10 estoppel did not apply because claim limitation had been amended but not

11 narrowed during prosecution of patent).

12     In its tentative order granting summary judgment to Bosch, the Court

13 concluded that the issued gear limitation was narrowed during the prosecution of

14 the `833 patent.  Specifically, the Court found that the issued gear limitation was a

15 replacement of a broader "means-plus-function" limitation in application claim 1.[4]

16 The Court reached this conclusion by finding that: (1) application claim 1

17 contained a means-plus-function limitation; (2) the structure that corresponded to

18 the means-plus-function limitation was the teeth on the outside of the planet gear

19 holding plate;[5] (3) application claim 6 replaced application claim 1; (4) application

20 claim 6 was narrower than application claim 1 because it specifically recited the

21 teeth on the outside of the planet gear holding plate instead of describing this

22

23     [4] A limitation is a "means-plus function" limitation if it is "expressed as a means
   or step for performing a specified function" and does not recite the specific "structure,
24 material, or acts in support thereof."  *Laitram Corp. v. Rexnord Inc.*, 939 F.2d 1533,
   1535 (Fed. Cir. 1991).
25

26     [5] 35 U.S.C. § 112, ¶ 6 provides that "[a]n element in a claim for a combination
   may be expressed as a means . . . for performing a specified function . . . and such
27 claim shall be construed to cover the corresponding structure . . . described in the
28 specification . . . ."

1  limitation in a means-plus-function manner; (5) application claim 8 was dependent

2  on application claim 6 (and therefore incorporated its limitations); (6) application

3  claim 8 was rewritten in independent form in application claim 11; and (7)

4  application claim 11 became issued claim 1.

5          Since the February 8, 2002 hearing, the Court has reexamined the

6  prosecution history in light of the presentations made during the hearing.

7  Although previously the Court tentatively concluded that the issued gear limitation

8  was an amendment of the means-plus-function limitation in application claim 1,

9  the Court now holds that the issued gear limitation was not narrowed during the

10  prosecution of the `833 patent.

11          While the gear limitation in application claim 1 was in the form of a "means-

12  plus-function" limitation, the gear limitation in application claims 2 and 3

13  specifically recited the teeth on the outside of the planet gear holding plate.

14  Application claim 2 recited the following limitations:

15          said cylindrical internal gear is slidably mounted to be slidable
        along a gear axis of said reduction gear mechanism;

16
        *engaging teeth are formed on said gear case*; and
17
        *engaging teeth which engage with teeth of said cylindrical
18      internal teeth are provided on said planet gear holding plate*, whereby:

19          when said cylindrical internal gear is slid towards said planet gear
        holding plate, said cylindrical internal gear and said planet gear holding
20      plate are engaged with each other, and when said cylindrical internal
        gear is slid away from said planet gear holding plate, *said teeth of said*
21      *cylindrical gear are engaged with said engaging teeth formed on said*
        *gear case so that said cylindrical internal gear is locked to said*
22      *reduction gear such that rotation of said cylindrical internal gear is*
        *prevented.*

23
   DSUF ¶ 32 (emphasis added).  Application claim 3 was dependent on application
24
   claim 2, and therefore incorporated its limitations.
25
           In June 1986, the PTO rejected claims 1-5 because they were anticipated by
26
   prior art.  Corsello Decl. Ex. B at 42 ("Claims 1 and 2 are rejected under 35 U.S.C.
27
   102(b) as being anticipated by States `742."); *Id.* at 43 ("Claims 3 and 5 are
28

7

1  rejected . . . as being unpatentable over States `742 in view of Banker `330."); *Id.*

2  at 44 ("Claim 4 is rejected . . . as being unpatentable over States `742 in view of

3  Lamprey `023."); *see also* DSGI ¶ 8.

4        JSB does not dispute that in December 1986, "in an effort to overcome the

5  rejection, the applicants amended their application, canceling application claims 1-

6  5, and adding new claims 6-10." DSGI ¶ 9. JSB does dispute, however, that

7  application claim 6 was a "direct replacement of original claim 1." DSGI ¶ 12.

8  JSB argues that application claim 1 *had no replacement*, and that application claim

9  6 replaced application claim 2, and application claim 8 (which became issued

10  claim 1)[6]  replaced application claim 3.[7]

11        The Court accepts JSB's account of the prosecution history. First, from a

12  common sense perspective, application claim 8, like application claim 3, recites a

13  combination of the reduction gear and a lever. Application claim 1, in contrast,

14  recites only a reduction gear. Second, in the "Remarks" section that accompanied

15  _____

16      [6]Application claim 8 was dependent on application claim 6. The PTO rejected
application claim 6, but stated that application claim 8 would be permitted if it were

17  rewritten in independent form. Corsello Decl. Ex. B at 61. The applicants rewrote

18  application claim 8 in independent form in application claim 11. Application claim
11 became issued Claim 1.

19

20      [7]JSB also argues that application claim 8 was entirely "new" and was not an
amendment to a prior claim. This argument is unsupported by the prosecution

21  history, in which JSB characterizes claims 6-10 as an "Amendment, submitted in

22  response to [the PTO's rejection of claims 1-5]." Corsello Decl. Ex. B at 52. JSB
went on to state that the Amendment was "fully responsive to each point of objection

23  or rejection" identified by the PTO.

24      In addition, in its second supplemental brief filed August 12, 2002, JSB
essentially concedes that application claim 8 was a replacement of application claim

25  3, and does not persist in its argument that application claim 8 was not an amendment

26  to a prior application claim. *See* JSB's Supplemental Brief Concerning Equivalents
and the Semicircular Lever Limitation at 4-5 (stating that after the PTO rejected claim

27  3, "[i]n a responsive amendment . . . the applicants cancelled claim 3 and added claim

28  8.").

1  the application for claims 6-10, JSB explained how claim 8 improved over the
2  Banker invention. Corsello Decl. Ex. B at 55. The PTO rejected application claim
3  3 because it was anticipated by States in view of Banker. In rejecting application
4  claim 1, the PTO made no mention of Banker, and stated only that application
5  claim 1 was anticipated by States. Corsello Decl. Ex. B at 43-44. It does not
6  make sense that JSB would distinguish the Banker invention from the invention
7  disclosed in application claim 8 if application claim 8 was a replacement of
8  application claim 1. JSB's attempt to distinguish Banker from the invention in
9  application claim 8 lends further support to JSB's argument that claim 8 replaced
10 claim 3, not claim 1.

11      Most significant, however, is Bosch's failure to rebut (or even dispute)
12 JSB's account of the prosecution history. JSB presents that account in its
13 Statement of Uncontroverted Facts ("DSUF") ¶¶ 31-41. In that account, JSB
14 asserts that "[c]laims 6-10 were *not* a one-to-one substitution for claims 1-5.
15 Claims 6-10 were *new* claims that were *broader* in some respects and *narrower* in
16 other respects from original claims 1-5." DSUF ¶ 32 (emphasis in original). JSB
17 presents a chart, which shows the correspondence between the first claim set, the
18 second claim set and the issued claim set. DSUF ¶ 33. This chart indicates that:
19 (1) application claim 1 had no replacement; (2) application claim 2 corresponds to
20 application claim 6; (3) application claim 3 corresponds to application claim 8;
21 and (4) application claim 8 became issued claim 1. *Id.*

22      In its Statement of Genuine Issues, Bosch does not address or rebut JSB's
23 account of the prosecution history. Specifically, Bosch does not dispute that
24 issued claim 1 was a replacement of application claim 3. Bosch does not assert in
25 its Statement of Genuine Issues or present any evidence that issued claim 1 was a
26 replacement of application claim 1. Local Rule 56-3 provides:

27          In determining any motion for summary judgment, the Court will
            assume that the material facts as claimed and adequately supported by
28          the moving party are admitted to exist without controversy except to the

1    extent that such material facts are (a) included in [the opposing party's]
     "Statement of Genuine Issues" and (b) controverted by declaration or
2    other written evidence filed in opposition to the motion.

3    Bosch's failure to dispute JSB's assertion that the antecedent of the gear limitation

4    in issued claim 1 was application claim 3, not application claim 1, is fatal to its

5    argument that prosecution history estoppel applies.  There is no evidence that the

6    issued gear limitation was an amendment of the means-plus-function limitation in

7    application claim 1.  In short, Bosch has not presented any evidence indicating that

8    the issued gear limitation was narrowed during the prosecution of the `833 patent.

9    Therefore, JSB is not estopped from asserting an equivalents argument with

10   respect to the gear limitation.

11   **B.    Does the Bosch PG1 Gearset Contain an Equivalent of the Gear**

12   **Limitation?**

13   "[A] device that does not infringe a patent claim literally may still infringe

14   the very same claim under the [doctrine of equivalents] if every limitation of the

15   claim is literally or equivalently present in the accused device.  For a claim

16   limitation to be 'equivalently present' in an accused device, there must be only

17   'insubstantial differences' between the missing claim limitation and corresponding

18   aspects of the accused device." *Zodiac Pool Care, Inc., v. Hoffinger Indus., Inc.,*

19   206 F.3d 1408, 1415 (Fed. Cir. 2000) (quoting *Hilton Davis Chem. Co. v.*

20   *Warner-Jenkinson Co.,* 62 F.3d 1512, 1517-18 (Fed. Cir. 1995), *rev'd on other*

21   *grounds,* 520 U.S. 17 (1997)) (citation omitted).  "Each element contained in a

22   patent claim is deemed material to defining the scope of the patented invention,

23   and thus the doctrine of equivalents must be applied to individual elements of the

24   claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis*

25   *Chem. Co.,* 520 U.S. 17, 29 (1997).  This means that "to establish infringement

26   under the doctrine of equivalents, the accused device must be shown to include an

27   equivalent for each literally absent claim limitation." *Dawn Equipment Co. v.*

28   *Kentucky Farms Inc.,* 140 F.3d 1009, 1015 (Fed. Cir. 1998) (citing

10

1    *Warner-Jenkinson*, 520 U.S. at 29).

2    The Federal Circuit frequently employs the "function-way-result" test to
3    determine whether an element infringes by equivalents. *Id.* at 1016. "Under the
4    function-way-result test, one considers whether the element of the accused device
5    at issue performs substantially the same function, in substantially the same way, to
6    achieve substantially the same result, as the limitation at issue in the claim." *Id.*
7    (citing *Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518
8    (Fed.Cir.1995) (en banc), *rev'd on other grounds*, 520 U.S. 17 (1997)).

9    "A finding of equivalence is a determination of fact." *Hilton Davis*, 62 F.3d
10   at 1521. Therefore, juries typically should resolve the question of infringement by
11   equivalents. *Dawn Equipment*, 140 F.3d at 1015 n.2. Summary judgment on
12   infringement by equivalents is only appropriate "[w]here the evidence is such that
13   no reasonable jury" could disagree that two elements are or are not equivalent.
14   *Warner Jenkinson*, 520 U.S. at 38 n.8.

15   JSB argues that the only structural difference between the Bosch PG1
16   gearset and the gearset claimed in the `833 patent is the location of teeth on the
17   first planet gear holding plate in the Bosch drill, rather than on the second planet
18   gear holding plate as claimed in the `833 patent. JSB argues that this difference is
19   insubstantial because the first planet gear holding plate in the Bosch drill performs
20   the same function in substantially the same way to achieve the same result as the
21   second planet gear holding plate claimed in the `833 patent.

22   The power drill claimed in the `833 patent consists of multiple planetary
23   gear trains (there are three in the preferred embodiment) connected in a series and
24   a lever that permits the user to make one of the planetary gear trains (the middle
25   one in the preferred embodiment) operative or non-operative. The speed of the
26   drill (that is, high or low) depends on whether one of the planetary gear trains is
27   operative or not. Milestone Decl. ¶ 5.

28   The "function" claimed in the gear limitation is to have the teeth of at least

11

1   one planet gear holding plate engage the teeth of the internal gear so that the first
2   and second planet gear holding plates rotate at the same speed as the internal ring.
3   Milestone Decl. ¶ 8. This mode is referred to as "lock-up." *Id.* The "way" that
4   lock-up is achieved in the `833 patent is to axially position the internal gear so that
5   its internal teeth are engaged with the internal teeth on one of the planet gear
6   holding plates, which, in the `833 patent, is the *third sun gear/second planet gear*
7   *holding plate.* Milestone Decl. ¶ 8.

8        JSB argues that the Bosch drill achieves the same lock-up mode by axially
9   positioning the internal gear so that its teeth are engaged with the *second sun*
10  *gear/first planet gear holding plate.* Milestone Decl. ¶ 8. The result, JSB argues,
11  is the same: in both the `833 patent and in the Bosch drill, the first and second
12  planet gear holding plates and the second sun gear rotate at the same speed as the
13  second internal gear. In other words, the second planetary gear set in both drills
14  are "locked up," and the drill operates at high speed. Milestone Decl. ¶ 8.

15       Bosch argues that there is no equivalent to the gear limitation in the PG1
16  gearset. Roth Decl. ¶ 3. Bosch's expert, Dr. Roth, states in his declaration that
17  there are "substantial differences between placing a set of gear teeth for engaging
18  the inner teeth on the first-stage planetary gear holder (as in the PG1 gearset)
19  rather than on the second-stage planetary gear holder (as would be the case if the
20  PG1 gearset were designed according to the teachings of the `833 patent)." *Id.*
21  Specifically, Dr. Roth states that the function of the gear limitation is "to directly
22  interlock the internal gear of a stage of a planetary gear reducer with the planetary
23  gear holding plate of the planetary gear reducer." Roth Decl. ¶ 30. In the PG1
24  gearset, Dr. Roth states, at no time does the middle internal gear directly interlock
25  with the middle planetary gear holder. Roth Decl. ¶ 28.

26       Dr. Roth states that the difference in the way the drills are designed is
27  "substantial" because "if the gearbox is shifted to the high-speed condition when
28  the drill is running, the internal gear in the PG1 design is subjected to substantially

1   less torque than in the `833 design.  Being subjected to less torque, the teeth of the
2   internal gear are less heavily loaded, reducing the risk of tooth breakage and
3   allowing for the use of smaller gear teeth and smaller gear spacing, which would
4   improve shifting performance." Roth Decl. ¶ 33.

5         Given Dr. Roth's declaration, which states that nothing in the PG1 gearset
6   performs the function of the gear limitation, and that the PG1 gearset achieves
7   lock up in a different way that results in greater durability while shifting, Bosch
8   has raised a genuine issue as to whether an equivalent of the gear limitation can be
9   found in the PG1 gearset.  This factual dispute precludes granting summary
10  judgment to either party on the equivalents issue.

11  **C.   Does the PG1 Gearset Literally Infringe the Semicircular Lever**
12         **Limitation?**

13        Before the Court addresses whether the PG1 gearset literally infringes the
14  semicircular lever limitation, it must first construe that limitation, which states:
15  "said lever extending in a semicircle around said gear."  Corsello Decl. Ex. A at 9,
16  Col 6:11-12.  JSB proposes that this limitation should be construed to mean that
17  "the lever surrounds or encompasses a portion (approximately one-half) of the
18  cylindrical internal gear."  Joint Statement of Disputed and Undisputed Terms, Ex.
19  A ("Disputed Terms") at 17.  Bosch proposes that this limitation should be
20  construed to mean that "the lever is formed, at least in part, in the shape of an arc
21  that follows the outline of part of a circle."  *Id.*

22        The court, not the jury, must construe the meaning and scope of patent
23  terms.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)
24  (en banc), *aff'd*, 517 U.S. 370 (1996).  Claim construction begins and ends with
25  the actual words of the claim.  *Renishaw PLC v. Marposs Societa' per Azioni*, 158
26  F.3d 1243, 1248 (Fed. Cir. 1998).  In construing disputed claim terms, the court
27  should look first to intrinsic evidence.  *Vitronics Corp. v. Conceptronic, Inc.*, 90
28  F.3d 1576, 1582 (Fed. Cir. 1996.).  Intrinsic evidence includes the language of the

1   claims, the specification and the file history, if in evidence. *Id.* The file history is

2   often important intrinsic evidence because any interpretation that is either

3   provided or disavowed in the file history affects the claim scope. *Renishaw*, 158

4   F.3d at 1249 n.3. In most situations, analysis of the intrinsic evidence alone will

5   resolve any ambiguity in a disputed claim term. *Vitronics*, 90 F.3d at 1583.

6       Absent a special and particular definition created by the inventor, e.g., the

7   inventor acted as his own lexicographer, terms in a claim are to be given their

8   ordinary and accustomed meaning. *Renishaw*, 158 F.3d at 1249. The court must

9   review the specification to determine whether disputed terms have been used by

10  the inventor in a manner other than their ordinary meaning. *Vitronics*, 90 F.3d at

11  1582.

12      The Court agrees with Bosch that JSB's proposed construction of the

13  semicircular lever limitation – a lever that surrounds or encompasses a portion of

14  the internal gear – reads out of that limitation the words "in a semicircle." Were

15  the Court to accept JSB's proposed construction, a rectangular or even pointed

16  lever would also literally infringe the semicircular lever limitation. *See* Bosch's

17  *Markman* Memorandum at 2 (illustrating a rectangular or pointed lever that would

18  meet JSB's proposed construction of the semicircular lever limitation). This result

19  is clearly incorrect and defies common sense. Moreover, it is a well-settled canon

20  of claim construction that Courts should not read limitations out of a claim.

21  *Ethicon Endo-Surgery, Inc. v. U.S. Surgincal Corp.*, 93 F.3d 1572, 1582 (Fed. Cir.

22  1996) (citation omitted). The Court agrees with Bosch's unremarkable

23  proposition that the semicircular lever limitation requires that the lever have a

24  shape that is semicircular.

25      *Bai v. L & L Wings, Inc.*, 1997 WL 527870 (S.D.N.Y. Aug. 22, 1997), *aff'd*,

26  160 F.3d 1350 (Fed. Cir. 1998), is directly analogous to the present case. There,

27  the patent at issue recited, in relevant part, "a glove formed of a hemispherical

28  dish-shaped rigid plastic member." *Id.*, at *1. The defendant argued that its

14

1   product did not literally infringe this claim "because the plastic glove member of

2   the accused structure is *not* 'hemispherical.'" *Id.*, at *2. Rather, the glove member

3   of the accused structure was "not part of a sphere, having a perceptibly flattened

4   surface." *Id.*

5          The plaintiff argued that, despite its use of the word "hemispherical" in the

6   patent claim, it had chosen to be its own lexicographer because the drawings that

7   accompanied the claims depicted a rigid glove that was less than a hemisphere.

8   The court held that even though the drawings depicted the glove as being less than

9   a hemisphere, they were, nonetheless, "a part of a sphere." *Id.* Because the

10  defendant's glove member was not part of a sphere at all, the court concluded that

11  defendant had not literally infringed plaintiff's patent.

12         Here, JSB advances a similar argument that it chose to be its own

13  lexicographer because the preferred embodiment of the lever does not depict the

14  lever as a perfect half-circle. Rather, the depicted lever has a stepped segment on

15  either side of circular segment that is less than 180 degrees (i.e., less than a

16  semicircle). *See* Corsello Decl. Ex. A at 5 (two drawings of the preferred

17  embodiment of the lever claimed in the `833 patent). Although the claimed lever

18  is less than a semicircle, it is, nonetheless, part of a circle. For the word

19  "semicircle" to have any meaning (i.e., to avoid reading this term entirely out of

20  the patent), the lever must contain at least part of a circle.

21         Under this construction, Bosch's PG1 gearset does not literally infringe the

22  `833 patent. The lever in the PG1 gearset does not contain part of a circle. *See*

23  Cotter Decl. Ex. D at 178 (side-by-side drawings of the claimed lever and the

24  accused lever). Instead, it extends around the internal gear in a series of five

25  straight line segments, and is in the shape of a semi-octagon (like the top half of a

26  stop sign). Therefore, the Bosch drill does not literally infringe the semicircular

27  lever limitation in the `833 patent.

28  ///

1 **D.      Is JSB Estopped From Arguing that the Bosch PG1 Gearset Contains**

2 **an Equivalent of the Semicircular Lever Limitation?**

3          When JSB originally submitted the application for the `833 patent,[8] the

4 lever limitation was recited in application claim 3.  That limitation recited:

5          a lever, both ends of said lever having fulcrums on parts of said gear
           case and being inserted into windows formed in said gear case, said
6          lever being slidably engaged with said one of said annular groove and
           annular protrusion so that said cylindrical internal gear is slid along the
7          gear axis by operation of said lever.

8 Corsello Decl. Ex. B at 29-30.

9          In June 1986, the PTO rejected application claim 3 "under 35 U.S.C. [§] 103

10 as being unpatentable over States `742 in view of Banker `330."  Corsello Decl.

11 Ex. B at 43.  The PTO went on to explain that "States shows an annular groove

12 (29) formed in an outer wall of the cylindrical internal gear (24), and the output

13 shaft of a planet plate (8) having a sun gear (19) formed thereon.  Banker shows a

14 lever (42) with a fulcrum on part of a gear case (45), the lever being slidably

15 engaged with a groove (39) to slide an internal gear on operation of the lever.  To

16 modify the States reduction gear by replacing the shifting means (26) with a lever

17 similar to that of Banker would be obvious to the artisan of ordinary skill in two

18 speed planetary transmissions."  Corsello Decl. Ex. B. at 43-44.

19          As explained above, in December 1986, the applicants cancelled claims 1 to

20 5 and added new claims 6 to 10.  Also as explained above, application claim 8 was

21 a replacement of application claim 3.  See *supra* note 7; *see also* DSUF ¶ 33 (chart

22 submitted by JSB showing that claim 8 replaced claim 3).  Application claim 8

23 claimed:

24          the reduction gear as claimed in claim 6, wherein an annular groove is

25 _____

26          [8]The precise date that the application was filed is unclear.  The filing date on
the application is July 12, 1985, Corsello Decl. Ex. B at 12-13, but a later declaration
27 "corrects the filing date[]" from July 16, 1985 to July 16, 1984.  Corsello Decl. Ex.
28 B at 38.

formed in an outer surface of said internal gear, and further comprising a lever for sliding said internal gear between said first and second positions, *said lever extending in a semicircle around said internal gear*, said gear case extending circumferentially around said internal gear, said lever being pivotally mounted to said gear case, and said lever having pins on opposite sides thereof passing through windows in said gear case and slidably received in said annular groove at opposed points around the circumference of said internal gear.

Corsello Decl. Ex. B at 49-50 (emphasis added).

In the "Remarks" section of the December 1986 application, JSB stated that "[t]his Amendment . . . is believed fully responsive to each point of objection or rejection raised" by the PTO. Corsello Decl. Ex. B at 52. JSB distinguished the invention disclosed in application claim 8 from the invention disclosed in the Banker patent by stating: "[I]n the Banker patent, the lever 42 used to slide an internal gear 38 is mounted on a pivot point outside and to one side of the internal gear 38 . . . . As a result, the mechanism cannot be made compact, requiring space for the radial extent of the lever 42 and the pivot shaft 44. On the other hand, in the invention as set forth in new claim 8, due to the pivotal mounting of the lever on the gear case circumferentially surrounding the internal gear and with the pins of the lever passing through windows in the gear case, a very compact and reliable sliding mechanism results." Corsello Decl. Ex. B at 55-56.

As explained above, *see* supra note 6, the PTO stated that it would accept claim 8 if it were rewritten in independent form. The applicants rewrote claim 8 in independent form and submitted it as application claim 11, which became issued claim 1. Corsello Decl. Ex. B at 70.

JSB concedes that the semicircular lever limitation was amended and narrowed during the prosecution of the `833 patent. The Court further finds that JSB amended and narrowed the lever limitation to overcome a rejection by the PTO based on prior art. In particular, as established by the "Remarks" accompanying application claim 8, JSB amended and narrowed the lever limitation to distinguish the invention claimed in the `833 patent from the

17

1 invention claimed in the States and Banker patent.  Therefore, this narrowing
2 amendment, which was made for reasons relating to patentability, may give rise to
3 prosecution history estoppel. *Festo*, 122 S. Ct. at 1839 ("We agree with the Court
4 of Appeals that a narrowing amendment made to satisfy any requirement of the
5 Patent Act may give rise to an estoppel."); *see also id.* at 1840 ("Estoppel arises
6 when an amendment is made to secure the patent and the amendment narrows the
7 patent's scope.").

8      Although in *Festo* the Supreme Court agreed with the Federal Circuit that a
9 narrowing amendment made for purposes related to patentability could give rise to
10 an estoppel, it disagreed with the Federal Circuit that all such amendments
11 completely barred the entire range of equivalents to the narrowed claim. "Though
12 prosecution history estoppel can bar challenges to a wide range of equivalents, its
13 reach requires an examination of the subject matter surrendered by the narrowing
14 amendment." *Id.* at 1840. "There is no reason why a narrowing amendment
15 should be deemed to relinquish equivalents unforeseeable at the time of the
16 amendment and beyond a fair interpretation of what was surrendered.  Nor is there
17 any call to foreclose claims of equivalence for aspects of the invention that have
18 only a peripheral relation to the reason the amendment was submitted." *Id.* at
19 1841.

20      The Court held that the burden was on the patentee to show that "the
21 amendment does not surrender the particular equivalent in question." *Id.* at 1842.
22 Courts may presume that by amending a claim, the patentee surrendered all of the
23 territory in between the original claim and the amended claim. *Id.*  The patentee
24 may overcome this presumption, however, by demonstrating that, for example: (1)
25 the equivalent was unforeseeable at the time of the application; (2) the rationale
26 underlying the amendment bears "no more than a tangential relation to the
27 equivalent in question;" or (3) there was "some other reason suggesting that the
28 patentee could not reasonably be expected to have described the insubstantial

1  substitute in question." In short, "[t]he patentee must show that at the time of the
2  amendment one skilled in the art could not reasonably be expected to have drafted
3  a claim that would have literally encompassed the alleged equivalent." *Id.*

4  Applying the rules articulated by the *Festo* Court, the Court starts with the
5  presumption that JSB surrendered all equivalents that fall within the territory
6  between the original claim – application claim 3 – and the narrowed claim –
7  application claim 8. With respect to the lever element, application claim 8 is
8  narrower than application claim 3 in two fundamental respects: (1) application
9  claim 8 specifies the location of the lever ("said lever being pivotably mounted to
10 said gear case" where "said gear case extend[s] circumferentially around said
11 internal gear") whereas application claim 3 does not specify the location of the
12 lever; and (2) application claim 8 specifies the shape of the lever ("said lever
13 extending in a semicircle around said internal gear") whereas application claim 3
14 does not specify the shape of the lever. The claimed equivalent – a lever of a
15 shape other than that of a semicircle – does fall within the territory surrendered by
16 the amendment, and therefore is presumptively barred under the doctrine of
17 prosecution history estoppel.

18 JSB attempts to overcome the presumption by arguing that the amendment
19 at issue bears "no more than a tangential relation to the equivalent in question."
20 *Festo*, 112 S. Ct. at 1842. Specifically, JSB argues that the reason for the
21 amendment to application claim 3 was to distinguish the claimed invention from
22 the prior art in terms of the *location* of the lever – not its shape. JSB's argument is
23 supported by the "Remarks" section accompanying application claim 8. There,
24 JSB argued to the PTO that, unlike the Banker patent, in which the lever "is
25 mounted on a pivot point outside and to one side of the internal gear," the lever in
26 the claimed invention was mounted "on the gear case circumferentially
27 surrounding the internal gear." Corsello Decl. Ex. B at 55-56. That difference in
28 the location of the lever, the Remarks section went on to explain, meant that the

19

1 | claimed invention improved over Banker by providing for "a very compact and
2 | reliable sliding mechanism." Corsello Decl. Ex. B at 56. The "Remarks" section
3 | makes no reference to the difference in shape between the claimed lever and the
4 | Banker lever.

5 |      This aspect of the prosecution history does tend to support the conclusion
6 | that the JSB did not surrender its ability to assert an equivalents argument with
7 | respect to levers shaped differently from a semicircle because the purpose of the
8 | amendment was to narrow the location of the lever – not its shape. When the
9 | semicircular lever limitation is read in the context of the "Remarks" section, a
10 | strong argument can be made that the reason JSB used the phrase "in a semicircle"
11 | was to convey that the lever goes around the internal gear, not to convey that the
12 | lever must be of a particular shape.

13 |      On the other hand, Bosch, too, makes a strong argument: that JSB easily
14 | could have drafted a claim that literally captured the territory it asserts in this
15 | litigation not to have surrendered. For example, JSB could have used the language
16 | it now asserts that it meant all along: "The . . . lever surrounds the internal gear
17 | and is pivotally mounted to apply forces at diametrically opposite points." JSB's
18 | Supplemental Brief Concerning the *Festo* Decision at 6. Or, as Bosch points out,
19 | JSB simply could have omitted from the claim the three words "in a semicircle,"
20 | with the resulting claim: "said lever extending around said internal gear."

21 |      The Court finds not only that JSB easily could have drafted its claim to
22 | cover the equivalent at issue, but also that it was foreseeable to one of skill in the
23 | art of two speed planetary transmissions that levers of a different geometric shape
24 | – like the segmented, octagonal levers used in the Bosch PG1 gearset – could be
25 | used instead of the smoothly curved lever described in the `833 patent.

26 |      Moreover, as Bosch pointed out during the final hearing on these motions,
27 | one aspect of the prosecution history estoppel – the  parallel prosecution history of
28 | application claim 6 – undermines JSB's argument that specifying the shape of the

20

1  lever was not relevant to distinguishing the claimed invention from the prior art.
2  When JSB submitted new claims 6-10, claim 6 did not include a lever element at
3  all.  Corsello Decl. Ex. B at 48-49.  The PTO rejected claim 6 in view of the prior
4  art, but, as already noted, allowed claim 8, which included a lever element that
5  contained shape and location limitations.  Corsello Decl. Ex. B at 59-61.

6      On May 20, 1987, JSB amended independent claim 6 to include a lever
7  element, but the lever element specified neither the shape nor the location of the
8  lever.  Corsello Decl. Ex. B at 65.  The PTO again rejected the amended
9  application claim 6 as being anticipated by the Starr patent.  Corsello Decl. Ex. B
10  at 76.  The PTO explained that Starr "provided a lever (30) pivotally mounted on
11  the gear case and slidably engaged with the internal gear for moving the internal
12  gear."  Corsello Decl. Ex. B at 77.

13      In December 1987, JSB again amended claim 6 to include a lever element,
14  but this time it narrowed the claim to specify that the lever was located at "a point
15  radially exterior to said planet gears."  Corsello Decl. Ex. B at 83.  The PTO again
16  rejected the twice-amended claim 6 because it was anticipated by a combination of
17  the Starr and Farwick patents.  Corsello Decl. Ex. B at 92.  Rather than appeal the
18  rejection, JSB cancelled application claim 6.  Corsello Decl. Ex. B at 97.

19      The PTO therefore rejected the final proposed version of claim 6, which
20  included a lever limitation, even though that lever limitation specified the location
21  of the lever.  What that lever limitation did not specify was its *shape*.  Rather than
22  appeal the rejection of amended claim 6, JSB cancelled that claim and the patent
23  issued with a lever limitation that specified both the lever's location and its shape.
24  Given this parallel prosecution history of claim 6, the Court cannot conclude that
25  the shape of the lever is wholly unrelated to JSB's attempt to overcome the prior
26  art.

27      Given these facts, the Court holds that JSB has failed to rebut the
28  presumption that it surrendered the territory between application claim 3 and the

21

1  narrowed application claim 8. Although it is a close question, JSB, the patentee,

2  has the burden under *Festo* to show that it did not surrender that territory. *Festo*,

3  112 S. Ct. at 1842. Close questions, therefore, should be resolved in favor of the

4  accused infringer. JSB simply has not demonstrated that "at the time of the

5  amendment one skilled in the art could not reasonably be expected to have drafted

6  a claim that would have literally encompassed the alleged equivalent." *Id.* Also,

7  given the parallel prosecution history of application claim 6, JSB has not

8  demonstrated that specifying the shape of the lever was tangential to the reasons it

9  amended the semicircular lever limitation. Therefore, JSB is estopped under the

10 doctrine of prosecution history estoppel from arguing that the Bosch PG1 gearset

11 infringes by equivalents the `833 patent. Bosch is entitled to summary judgment

12 on the issue of infringement of the semicircular lever limitation.

13                                    **III.**

14                              **CONCLUSION**

15         JSB has conceded that the gear limitation is not literally present in the

16 Bosch PG1 gearset. The Court concludes that the Bosch PG1 gearset does not

17 literally infringe the semicircular lever limitation. However, there is a genuine

18 issue of material fact whether an equivalent of the gear limitation is present in the

19 Bosch PG1 gearset. The Court also concludes that JSB is estopped from arguing

20 that an equivalent of the semicircular lever limitation is present in the Bosch PG1

21 gearset. Therefore, although there is a genuine issue of material fact whether the

22 Bosch PG1 gearset infringes by equivalents the gear limitation, JSB is unable to

23 establish infringement of the `833 patent because it is unable to establish that

24 Bosch infringed the semicircular lever limitation. *See Zodiac Pool Care,* 206 F.3d

25 at 1415 ("Absent any limitation of a patent claim, an accused device cannot be

26 held to literally infringe the claim."). Therefore, Bosch is entitled to a summary

27 judgment of non-infringement because as to one of the limitations – the

28 semicircular lever – JSB cannot prove infringement.

1    JSB's motion for a summary judgment of infringement is DENIED.[9]

2    Bosch's motion for a summary judgment of non-infringement is GRANTED.[10]

3    Because Bosch is entitled to summary judgment, the Court DENIES its motion for

4    leave to amend its reply to JSB's counterclaims to state an affirmative defense of

5    invalidity.[11]

6

7    IT IS SO ORDERED.

8

9    DATED: Sept 13, 2002

10                                          A. HOWARD MATZ
                                            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    ───────────────

26    [9]Docket number 29.

27    [10]Docket number 22.

28    [11]Docket number 57.

23